AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of Hawaii

**SEALED BY ORDER OF THE COURT**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Feb 26, 2025, 12:46 pm
Lucy H. Carrillo, Clerk of Court

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| STEVEN TINOCO | ) Case No. |
| | ) Mag. No. 25-00155 WRP |
| | ) |
| | ) **FILED UNDER SEAL PURSUANT TO** |
| Defendant(s) | ) **CRIMLR5.2(a)(1)** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **December 2023 to February 2025** in the county of _____ in the _____ District of **Hawaii**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), b)(1)(A) | Possession with Intent to Distribute 50 grams or more of methamphetamine |
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Possession with Intent to Distribute 5 grams or more of cocaine |

This criminal complaint is based on these facts:

See Attached

☑ Continued on the attached sheet.

_____
Complainant's signature

James R. Cabansag
Printed name and title

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Fed.R.Crim.P. 4.1(b)(2).

Date: **February 26, 2025**

City and state: **Honolulu, Hawaii**

_____
Wes Reber Porter
United States Magistrate Judge

## AGENT'S AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1.  I, James R. Cabansag, being duly telephonically sworn, deposes and states as follows: I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations, and make arrests.

2.  I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the HSI Border Enforcement Security Taskforce (BEST) in Honolulu, Hawaii. I have been employed as a Special Agent since December 2020. As part of my employment with HSI, I attended approximately four months of comprehensive law enforcement and investigative training at the Federal Law Enforcement Training Center ("FLETC"). The training successfully completed at the FLETC included but was not limited to, general investigative techniques, criminal law, immigration, law, handling of evidence, narcotics detection and identification, and trends in smuggling of contraband, among other topics. I previously worked as a Special Agent for the U.S. Department of State, Diplomatic Security Service for 10 years and graduated the Criminal Investigator Training Program (CITP) from FLETC in 2008. I am currently assigned to the HSI BEST - Honolulu which is responsible for investigating a broad scope of violations of Federal law, which include, but are not

limited to vulnerabilities in the nation's border, narcotics, human smuggling, infrastructure, and economic and transportation systems. My duties include but are not limited to investigating, apprehending, and preparing for prosecution cases against persons of possible criminal violations of narcotics trafficking.

3.  The information contained in this affidavit was derived from (1) personal investigative knowledge; (2) information related to me by other law enforcement officers associated with this investigation; and (3) from witnesses with personal knowledge of the events they have told me. This affidavit summarizes this information but does not attempt to provide each, and every, factual detail discovered during this investigation. The information set forth herein is to establish that probable cause exists to STEVEN TINOCO ("TINOCO") for violation of Title 21, United States Code, Sections 841(a)(1) and Sections 841(b)(1)(A) and 841(b)(1)(C).

4.  Based on my training and experience and information provided to me by other law enforcement officers and agents, I know that 879.2 grams of methamphetamine is a distributable amount of the drug. Additionally, I know that 135.9 grams of cocaine is a distributable amount of the drug.

//

//

//

## **PROBABLE CAUSE**

5.  Beginning in March 2023, a Cooperating Defendant ("CD")[1] informed law enforcement that he/she had recently met a male named "Steve". The CD provided identifiers for "Steve", and through law enforcement database checks, the individual referenced by the CD was confirmed to be Steven TINOCO ("TINOCO").

6.  According to the CD, TINOCO is connected to a Mexico-based Drug Trafficking Organization and distributes multi-pound quantities of methamphetamine.

   a.  TINOCO met with CD in San Diego, California where the CD purchased approximately six (6) pounds of methamphetamine. The CD and TINOCO agreed that for future transactions, TINOCO would utilize a San Diego-area commercial parcel service to send methamphetamine and possibly other narcotics to the Island of Maui for the CD to distribute.

---

[1] CD is facing possible federal criminal drug charges and is cooperating in hopes of receiving consideration with respect to charging and/or sentencing should CD be prosecuted in the future. CD has several felony convictions (including for burglary, forgery, theft, and unauthorized entry into a vehicle). CD has arrests for drug offenses and ammunition/firearm offenses. CD is not charged with any crime at this time but has made statements against CD's penal interest to investigators. Investigators are not aware of any inaccurate or unreliable information provided by CD and information provided by CD to date has been corroborated by information from public and law enforcement databases, telephone subscriber and telephone toll records, and physical surveillance, and has not been found to be false or misleading. CD has at least one controlled purchase and has provided information that have led to the seizures of narcotics in other HSI investigations. For these reasons, I believe CD is reliable.

b. Prior to the CD's cooperation with law enforcement, the CD estimated receiving at least five (5) parcels containing methamphetamine from TINOCO.

c. Sometime during October 2023, the CD received a text message from a phone number associated with TINOCO.

7. According to Affiant's review of the aforementioned text message conversation, TINOCO sent the CD a photograph containing what appeared to be dozens of bags containing what appeared to be methamphetamine. During an ensuing text message conversation, TINOCO provided the CD prices for methamphetamine and cocaine.

8. During the month of December 2023, TINOCO and the CD engaged in a series of conversations using a cell phone application where both negotiated an upcoming transaction where TINOCO would send the CD two (2) pounds of methamphetamine and five (5) ounces of cocaine.

9. On December 21, 2023, under the supervision of law enforcement, the CD placed a recorded phone call to TINOCO. In doing so, TINOCO confirmed that he sent out the parcel containing the narcotics they had discussed. Following this recorded call, TINOCO sent the CD a text message containing a tracking number from a commercial courier service.

10. On December 26, 2023, utilizing the tracking number provided by

4

TINOCO, law enforcement monitored to movement of the parcel as it arrived on the Island of Maui. Law enforcement was able to locate and subsequently recover the parcel. The CD (intended recipient of the parcel) granted law enforcement consent to open the parcel and retrieve its contents.

11. On December 27, 2023, law enforcement opened the parcel bearing the tracking number provided by TINOCO, and recovered the following:

    a) Approximately 879 grams of suspected methamphetamine; and

    b) Approximately 136 grams of suspected cocaine

11. After law enforcement recovered the suspected methamphetamine and cocaine, the items were sent to the US Customs and Border Protection laboratory ("CBP Laboratory") for chemical analysis.

12. In April 2024, the CBP Laboratory provided law enforcement with the following laboratory results of the seized narcotics from the commercial parcel:

    a) A net weight of 879.2 grams of methamphetamine

    b) A net weight of 135.9 grams of cocaine

13. On February 24, 2025, investigators conducted surveillance on TINOCO when he arrived in Maui. Investigators observed TINOCO meet with CD. Following this meet, investigators meet with CD. CD confirmed that during his meet with TINOCO, CD paid TINOCO $2,000.00 which was for a debt for a prior shipment of methamphetamine.

14. On February 24, 2025, at the instruction of law enforcement, CD spoke with TINOCO on a recorded telephone call. On the call, TINOCO confirmed that CD had paid him "two" earlier during the day. TINOCO told CD that he needed between "four" and "five" to get additional parcels sent to CD. TINOCO said that the parcels were ready and was just waiting for the money. CD and TINOCO agreed to meet in the morning on February 25, 2025.

15. On February 25, 2025, investigators conducted surveillance on TINOCO and observed TINOCO meet with CD. Following the meet, CD admitted that during his encounter with TINOCO, CD paid TINOCO an additional $1,000.00 for the debt of a previous shipment of methamphetamine.

16. On February 25, 2025, Maui Police Department ("MPD") and HSI Task Force Officers ("TFO") arrested TINOCO for 21 U.S.C. Section 841(a)(1) and transported TINOCO back to MPD Station. Shortly thereafter, investigators advised TINOCO of his Miranda rights verbally and in writing. TINOCO stated he understood his rights both verbally and in writing and agreed to speak to investigators without an attorney present.

   a) In his post arrest interview TINOCO stated in February 2025, he sent a parcel containing approximately two and a half (2.5) pounds of methamphetamine to Co-Conspirator 1 in Maui. TINOCO also stated in February 2025, he sent another parcel of approximately two (2) pounds of

6

methamphetamine to Co-Conspirator 2 in Maui.

    b)    TINOCO stated on this trip he collected approximately $2,900.00 from CD for previous shipments of methamphetamine to Maui.

    c)    TINOCO gave written consent for investigators to search his cell phone. On the cell phone, investigators observed communication between TINOCO and a known number for Co-Conspirator 2 corroborating the shipment of two (2) pounds of Methamphetamine to Co-Conspirator 2 for approximately $3,000.00.

FURTHER AFFIANT SAYETH NAUGHT.

_____
James R. Cabansag
Special Agent
Homeland Security Investigations

This Criminal Complaint and Agent's Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crime found to exist by the undersigned Judicial Officer at __11:17__ a.m. on February 26, 2025.

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to FRCP 4(d) and 4.1(b)(2)(A) this 26th day of February, 2025.



_____
Wes Reber Porter
United States Magistrate Judge

7